## UDALL | SHUMWAY
COUNSELORS AT LAW SINCE 1965

1138 NORTH ALMA SCHOOL ROAD, SUITE 101
MESA, ARIZONA 85201
Telephone: 480.461.5300 | Fax: 480.833.9392

Bradley D. Gardner (SBN: 011211)
bdg@udallshumway.com
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jaie Israel, | Case No.: |
| Plaintiff, | |
| v. | **Complaint** |
| U.S. Bank, N.A., an affiliate of U.S. Bancorp, a foreign corporation. | **(Jury Trial Demanded)** |
| Defendant. | |

Plaintiff Jaie Israel ("Plaintiff"), through undersigned counsel, alleges the following facts and claims against Defendant U.S. Bank, N.A ("Defendant"), and demands a trial by jury pursuant to the Federal Rules of Civil Procedure, Rules of Civil Procedure, Rule 3, 7(a)1, 8(a) and 38(a) and (b) and alleges as follows:

### General Allegations

1.     This is an action of discrimination and retaliation in the workplace brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, by the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1), and Title I of the Americans with Disabilities Act, as amended.

2.    Plaintiff is an employee of Defendant within the meaning of 42 U.S.C. § 2000e(f) and 29 U.S.C. § 203(e)(1).

3.    This Court has jurisdiction over this case under 28 U.S.C. §§1331.

4.    Venue is proper in this District under 28 U.S.C. §1391 as most or all of the acts alleged herein occurred within the geographic region covered by this District of Arizona.

5.    Plaintiff is African-American in race who was pregnant at the time the alleged discrimination and retaliation took place as set forth below.

6.    Plaintiff was the only pregnant female during her employment at one of Defendant's local Scottdale, Arizona branches.

7.    Plaintiff is a citizen of the United States of America and a resident of Maricopa County in this Judicial District.

8.    Defendant is foreign for-profit corporation with operating subsidiaries located within this District.

9.    Plaintiff alleges that Defendant is legally responsible for the acts and/or omissions giving rise to this cause of action and is legally and proximately responsible for damages as alleged herein.

**Nature of Case**

10.    Plaintiff realleges the aforementioned paragraphs as if fully set forth herein.

11.    Plaintiff was hired by Defendant in March 2015 as a Universal Banker in Cincinnati, Ohio.

12.    On September 4, 2018 Plaintiff transferred to a local branch in Scottsdale, Arizona.

13.    The Scottsdale, Arizona branch is located inside of a Safeway grocery store.

14.    From the first day Plaintiff began working at this branch she was treated differently than other non-African American, pregnant employees.

15.    During this time Plaintiff was pregnant and experiencing ongoing lightheadedness due to constantly standing and/or moving around.

16.    Plaintiff made her manager, Travis Canfield ("Mr. Canfield"), aware of her medical concerns.

17.    On or around September 20, 2018 Plaintiff submitted a doctor's note to Mr. Canfield requesting that Plaintiff's work be conducted while seated for the duration of her pregnancy.

18.    When presented with the note, Mr. Canfield made a comment that Plaintiff never told him she was pregnant, which was a false statement.

19.    Plaintiff was not given a chair until on or around October 7, 2018.

20.    On October 13, 2018, Plaintiff reached out to HR Officer, Shari Ramos ("Ms. Ramos", located in Texas) to inform her of the working conditions she was experiencing.

21.    Plaintiff felt that Mr. Canfield was not being supportive as a manager to her pregnancy and medical conditions.  Mr. Canfield made Plaintiff feel like it was a hassle to accommodate her and that did not treat the other employees with negativity.

22.     Plaintiff did not receive proper training for certain tasks that were required of her, whereas other Caucasian employees received the proper training for the same tasks.

23.     Plaintiff was told by Mr. Canfield that working weekends was mandatory, yet, other Caucasian, male and female employees were given weekends off.  One of the Caucasian female employees was also a new hire and given weekends off.

24.     Plaintiff was assigned to work every weekend until she went on maternity leave.

25.     Plaintiff was also not given the option to work overtime hours when other Caucasian and/or non-pregnant, male and female employees were given the opportunity. When Plaintiff inquired about this, Mr. Canfield stated, "You're pregnant, so I didn't think to ask you."

26.     Plaintiff also found it difficult to secure requested days off for her doctor appointments.  At one point, Mr. Canfield made a comment to Plaintiff that it was irresponsible for her to not schedule appointments on her scheduled day off.

27.     On several occasions, Plaintiff's co-workers expressed their dissatisfaction regarding the way Mr. Canfield was treating Plaintiff.

28.     A fellow female employee even made a comment to Plaintiff asking if Mr. Canfield was racist.

29.     Plaintiff's co-workers volunteered and made Mr. Canfield aware they were willing to take Plaintiff's shifts on her requested days off, but their offers were ignored.

4

30.     As a result, Plaintiff was forced to go on maternity leave early to in order to make sure she could attend crucial doctor's appointments in the remaining weeks of her pregnancy.

31.     Plaintiff went on maternity leave from October 31, 2018 to January 29, 2019.

32.     On December 11, 2018 Plaintiff engaged in protected activity and filed a Charge of Discrimination against Defendant with the Arizona Attorney General's Office, Civil Rights Division ("AGO") for alleged discrimination.

33.     During Plaintiff's maternity leave an internal investigation was conducted by Defendant regarding the AGO Charge.   The internal investigation was closed as "unsubstantiated".

34.     Plaintiff returned from maternity leave on or around January 30, 2019.

35.     Upon her return, Plaintiff put in a request to transfer to a different branch location because of the hostile relationship she was experiencing with Mr. Canfield.

36.     Upon her return Plaintiff also noticed her business cards were missing. When Plaintiff inquired about it, no one seemed to have an answer.

37.     Upon her return Plaintiff also made Mr. Canfield aware of her intention to remain pumping.

38.     Plaintiff would need to pump at least three times per day during her scheduled shifts.

39.     During her conversation with Mr. Canfield his response was that she might be able to use Safeway's breakroom.

40.     Plaintiff advised Mr. Canfield this was not acceptable as it was not private, clean or comfortable.   Mr. Canfield felt it further appropriate to mention Safeway's public restrooms as an option.

41.     According to Defendant's Lactation Accommodation Policy, it states:

> Breastfeeding employees may express milk during work hours. Lactation breaks should run concurrently with normal rest breaks and meal times.

42.     Furthermore, the "Mothers' rooms" provision states:

> A clean, private space will be available for pumping.  The space will include an accessible electrical outlet, comfortable chair and small table.

43.     Section 7 of the Fair Labor Standards Act of 1938 (29 U.S.C. 207) ("FLSA"), as amended, also requires employers to provide reasonable break time for an employee to express breast milk for her nursing child for one year after the child's birth each time such employee needs to express the milk.

44.     The FLSA also requires employers provide a place and a reasonable amount of break time as frequently as needed by the nursing mother.

45.     Plaintiff was also rarely allowed to take her required/scheduled breaks, and when she was, they would be cut short to assist customers while other employees were taking extended breaks and/or lunches with no reprimand.

46.     On or around January 30, 2019, Plaintiff reached out to Ms. Ramos to discuss her concerns regarding Defendant's lack of need to accommodate any of Plaintiff's requests, the negative work environment she was experiencing, the lack of

6

communication from Mr. Canfield, and the option for Plaintiff to transfer her to another branch location.

47.    Ms. Ramos advised Plaintiff she would look into a transfer as a way to resolve both Plaintiff's request and a way to accommodate her pumping.

48.    Plaintiff never heard back from Ms. Ramos or Defendant.

49.    Defendant purposefully failed to accommodate Plaintiff's federally protected right to pump.

50.    On February 20, 2019, Plaintiff again reached out to Ms. Ramos and Vanessa Rodriguez to inform them she was felt Mr. Canfield was discriminating against for being the only pregnant, now mother, and trying to sabotage her.

51.    In March 2019, Plaintiff applied for the Assistant Bank Manager and Personal Banker positions at a Surprise, Arizona location in an effort to transfer herself because of Defendant's failure to assist with her requests.

52.    Plaintiff was willing to demote herself in order to remove herself from the ongoing hostile work environment.

53.    Plaintiff was offered the Personal Banker position via telephone and was advised that the branch manager and district manager were finalizing the paperwork.

54.    However, on April 17, 2019, Plaintiff received an e-mail from Defendant stating she had not been selected for the position.

55.    Upon information and belief, Plaintiff was turned down for both positions as a result of her previous EEOC complaint filed against Defendant.

56.     As time went on with Plaintiff being unable to pump, she began to experience excruciating pain in her breasts as well as extreme head pain as a result of having to work an entire shift without relief.

57.     Plaintiff was embarrassed to have to interact with customers because her breasts would become engorged as a result of not being able to pump.

58.     Plaintiff began to notice her milk supply was decreasing, causing her extreme stress and anxiety.

59.     By May 2019, the work environment and Plaintiff's communication with Mr. Canfield had not improved.  It was at this point, Plaintiff advised Mr. Canfield she would only communicate with him via e-mail to ensure their interactions were documented.

60.     At no point in time did Defendant investigate Plaintiff's concerns for discrimination.

61.     By May 2019, Plaintiff's medical issues as a result of not being able to pump became too severe for her to continue working.

62.     As a result of Defendant's failure to accommodate, Plaintiff had to take short-term disability from May 23 to November 28, 2019, due to the stress and side effects of not being able to pump while at work.

63.     While on leave, it was agreed that Plaintiff would transfer to a branch in Sun City, Arizona upon her return.

64.     To date, Plaintiff remains employed at this branch.

65.     Plaintiff has experienced financial hardship as a result of Defendant's actions.

66.     Plaintiff endured immense physical pain, weight gain, and abscesses under her armpits.  Plaintiff also lost her milk supply as a result of not being able to pump at work.

67.     Plaintiff suffered from postpartum depression as a result of being unable to provide natural nurturing and nutrition for her child.

68.     Plaintiff sought and continues ongoing psychological treatment for her postpartum depression.

69.     Plaintiff has been damaged as a result of Defendant's actions.

**Count I**
**(Race Discrimination in Violation of Title VII)**

70.     Plaintiff realleges the aforementioned paragraphs as if fully set forth herein.

71.     Plaintiff was discriminated and retaliated against because of her race (African American), in violation of Title VII.

72.     Title VII, prohibits employers from maintaining a discriminatory working environment that allows harassment based on race or ethnicity.

73.     Defendant violated Title VII by allowing Plaintiff to be harassed and discriminated against because of her race or ethnicity [before and] after she notified Defendant of the hostile work environment.

74.     Plaintiff is entitled to recover damages, including but not limited to, her lost wages, future pecuniary and nonpecuniary losses, emotional pain and suffering, punitive damages, interest, attorney's fees, and costs.

## Count II
### (Sex Discrimination in Violation of Title VII)

75.     Plaintiff realleges the aforementioned paragraphs as if fully set forth herein.

76.     Defendant is an employer within the meaning of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e et seq. (Title VII) and in particular, 42 U.S.C. § 2000e(b).

77.     Plaintiff was discriminated against because of her sex (female) and condition (pregnant), in violation of the Title VII.

78.     Title VII prohibits employers from maintaining a discriminatory working environment that allows treating a woman unfavorably because of pregnancy, childbirth, or a medical condition related to pregnancy or childbirth.

79.     Defendant's treatment towards Plaintiff and conduct in treating Plaintiff differently because she was the only pregnant female among its employees constitutes discrimination of Title VII.

80.     Defendant violated Title VII by allowing Plaintiff to be treated differently because she was a pregnant female, even after she notified the company she felt she was being discriminated against.

81.     Defendant's actions as alleged herein constitute discrimination on the basis of sex in violation of Title VII, and specifically, 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e(k).

82.     Defendant intentionally discriminated against Plaintiff and acted with malice or with reckless indifference to Plaintiff's federally protected rights.

83.     As a result of Defendant's discrimination, Plaintiff suffered damages, including, without limitation, loss of wages and associated benefits, emotional distress, mental anguish, and loss of enjoyment of life for which she could be compensated in an amount to be determined at trial.

## Count III
### (Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended)

84.     Plaintiff realleges the aforementioned paragraphs as if fully set forth herein.

85.     Pursuant to 42 U.S.C. § 2000e-3(a) it is unlawful employment practice for an employer to discriminate against any of its employees because the employee opposed any practice that is an unlawful employment practice.

86.     Title VII prohibits retaliating against an employee who makes charges, testifies, assists, or participates in enforcement proceedings.

87.     The filing of the prior EEOC charge, and pursuing that charge, was a protected activity under Title VII.

88.     Defendant was aware of the protected activity since it engaged in responding to Plaintiff's complaint.

89.     Defendant violated Title VII by turning down Plaintiff's job application because of Plaintiff's prior EEOC charge.

90.     As a direct and proximate result of Defendant's actions, Plaintiff lost the opportunity to earn an increase in salary.

91.     As a result of Defendant's unlawful retaliation, Plaintiff has suffered monetary damages for which she should be compensated in an amount to be determined at trial.

**Count IV**
**(Retaliation Discrimination in Violation of Title VII of the**
**Civil Rights Act of 1964, as amended)**

92.     Plaintiff realleges the aforementioned paragraphs as if fully set forth herein.

93.     The acts, policies and practices of Defendant, as alleged herein above, violate Title VII's retaliation discrimination provisions.

94.     Defendant willfully and intentionally discriminated against Plaintiff, as alleged above, on the basis of reprisals of her complaints about, and opposition to, Defendant's discrimination against Plaintiff on the basis of her sex, her pregnancy, her prior charge of discrimination filing with the Arizona Attorney General's Office, and Defendant's failure to enforce discrimination and harassment policies by creating a hostile work environment.

95.     Plaintiff is damaged by Defendant's violations of Title VII and has sustained mental and emotional distress, damage to her reputation, and such other damages as proven at trial.

1

2

**<u>Count V</u>**
**(Sex Discrimination in Violation of the FLSA, 29 U.S.C. § 207(r))**

3

4

96.    Plaintiff realleges the aforementioned paragraphs as if fully set forth herein.

5

6

7

8

9

10

11

12

97.    The FLSA, as amended by the Patient Protection and Affordable Care Act, 29 U.S.C. § 207(r), requires an employer to provide a suitable location and break times for the purpose of expressing milk for one year after a child's birth each time an employee has need to express the milk.  The location must be a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public.

13

14

98.    Defendant failed to provide Plaintiff with an appropriate lactation room or the time to allow Plaintiff to express milk.

15

16

17

99.    Defendant also engaged in a pattern of hostile behavior toward Plaintiff, causing her serious emotional anguish.

18

19

20

21

100.  Defendant intentionally discriminated against Plaintiff in violation of the FLSA and acted with malice or with reckless indifference to Plaintiff's federally protected rights.

22

23

24

25

26

101.  As a result of Defendant's actions as alleged herein, Plaintiff suffered damages, including, without limitation, loss of wages and associated benefits, and emotional distress, for which she could be compensated in an amount to be determined at trial pursuant to 29 U.S.C. § 216(b).

27

28

## Count VI
### (Retaliation in Violation of the FLSA, 29 U.S.C. § 215)

102.   Plaintiff realleges the aforementioned paragraphs as if fully set forth herein.

103.   The acts, policies and practices of Defendant, as alleged herein above, violate the FLSA's anti-retaliation provision.

104.   Defendant retaliated against Plaintiff in violation of the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), for her repeated and continued reports of her belief that Defendant was violating federal law by not providing her with an appropriate lactation room on a consistent basis.

105.   As a result of Defendant's actions alleged herein, Plaintiff has suffered damages, including, without limitation, loss of wages and associated benefits, and emotional distress, for which she could be compensated in an amount to be determined at trial pursuant to 29 U.S.C. § 216(b).

## Count VII
### (Americans with Disabilities Act (ADA) – Discrimination and Failure to Accommodate)

106.   Plaintiff realleges the aforementioned paragraphs as if fully set forth herein.

107.   Plaintiff has a disability or handicap, is perceived as having a disability or handicap, or is regarded as having a disability or having record of such impairment within the meaning of the ADA 42 U.S.C. §12102(2).

108.   On more than one occasion Plaintiff informed Defendant she required a reasonable accommodation because of her disability.

109.   Plaintiff is a qualified individual with a disability because she has a record of disability within the meaning of the ADA.

110.   Defendant failed to reasonably accommodate Plaintiff's disabilities related to her pregnancy.  The reasonable accommodations requested by Plaintiff did not pose an undue hardship on Defendant.

111.   Defendant acts through and by its entities, agents, and employees and is liable for the acts of its employees pursuant to, but not limited to the ADA, respondent superior doctrine, and agency principals and Title VII.

112.   As a direct and proximate result of Defendant's willful, intentional, malicious, and unlawful failure to accommodate Plaintiff's disability, and/or perceived disability, Plaintiff suffered and continues to suffer damages including, but not limited to consequential and economic, pain and suffering, stress, depression, embarrassment, loss of enjoyment of life, emotional distress and other compensation in amounts to be proven at trial.

**Count VIII**
**(ACRA Violations – Disability Discrimination and Retaliation)**

113.   Plaintiff realleges the aforementioned paragraphs as if fully set forth herein.

114.   Defendant is an "employer" within the meaning of the Arizona Civil Rights Act, A.R.S. § 41-1461 *et seq.* (the "ACRA"), and in particular, A.R.S. § 14-1461(3).

115.   Defendant subjected Plaintiff to discrimination on the basis of her disability, in violation of A.R.S. § 41-1463.

116.   Defendant's adverse action was caused by Plaintiff's protected activity.

117.   Defendant is directly and/or vicariously liable for the discrimination.

118.   As a consequence of Defendant's violations of the ACRA, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

A.   Grant a declaratory judgment that the conduct of the Defendant as described above violated Plaintiff's rights under Title VII, Americans with Disabilities Act of 1990, and the Arizona Civil Rights Act;

B.   Grant preliminary and permanent injunctions against Freightliner enjoining it from committing similar unlawful acts in the future;

C.   Award Plaintiff actual damages;

D.   Award Plaintiff general damages and compensatory damages in an amount to be determined at trial;

E.   Award Plaintiff punitive damages in an amount to be determined at trial;

F.   Award Plaintiff liquidated damages pursuant to 29 U.S.C. § 216(b);

G.   Award Plaintiff her attorney's fees and costs under the aforementioned statutes; and

H.   For such other and further relief as the Court deems reasonable and just.

### **Demand for Jury Trial**

Pursuant to the Federal Rules of Civil Procedure 38, Plaintiff demands a trial by jury.

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DATED:** June 15, 2020.

UDALL SHUMWAY PLC

By: /s/ Bradley D. Gardner
     Bradley D. Gardner, Esq.
     1138 North Alma School Road, Suite 101
     Mesa, Arizona 85201
     *Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

     I hereby certify that on June 15, 2020, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System.

By: /s/ Alyssa Quijano

5752198.1/117342.1